# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| RAHMAN A. FOREMAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 16 C 3948 |
| ) | |
| SOO LINE RAILROAD COMPANY ) | Judge John J. Tharp, Jr. |
| d/b/a Canadian Pacific Railway, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

The plaintiff, Rahman A. Foreman, alleges that his former employer Soo Line Railroad Company ("Soo Line") violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), by firing him. Foreman contends that this action was retaliatory and that the company fired him because he had previously filed a discrimination charge with the Equal Employment Opportunity Commission ("EEOC") and joined a federal lawsuit against Soo Line. Soo Line has moved for summary judgment. Because Foreman has not demonstrated that a reasonable jury could find that there was a causal connection between his complaints and his termination, Soo Line's motion is granted.

## BACKGROUND

Foreman, who is African American, was hired as a conductor trainee by Soo Line in 2002. He went through a training period of several months before beginning work as a conductor. In May 2011, Foreman filed a complaint based on racial discrimination against Soo Line with the EEOC. Pl.'s Statement of Undisputed Material Facts ("PSOF") ¶ 3, ECF No. 59. The following year, in July 2012, Foreman and other employees of Soo Line filed a lawsuit in this Court making numerous claims against Soo Line, including that the company had engaged in a pattern or practice of discrimination against African American employees. *See generally* Class

Action Compl., *Wilson v. Soo Line R.R. Co.*, No. 12-cv-5259 (N.D. Ill. July 2, 2012), ECF No. 1. In July 2013, Foreman signed a settlement agreement with Soo Line. Some of the terms of the agreement were confidential, but the terms included a full release of any claims that existed at the time of the signing of the agreement. Foreman continued to work for Soo Line after concluding this agreement.

While employed at Soo Line, Foreman was subject to discipline on multiple occasions prior to his eventual firing. For example, in May 2013, he was assessed both a five-day suspension for failing to properly secure track and a thirty-day suspension for failing to properly hold a job briefing, both in violation of operating rules. *See* Def.'s Statement of Uncontroverted Material Facts in Supp. of Its Mot. for Summ. J. ("DSOF") ¶¶ 36-37, ECF No. 53. In addition, in August 2013, Foreman received another thirty-day suspension for having failed to provide honest testimony at a previous hearing held in May. He signed a waiver accepting a thirty-day suspension while acknowledging that such dishonesty was a terminable offense. *See id.* ¶ 40. Finally, in March 2014, Foreman received another thirty-day record suspension (of which he served fifteen) following an incident in which he reportedly failed to properly line a switch, causing damage to equipment. Again, Foreman signed a waiver acknowledging responsibility and accepting a suspension for this offense. *Id.* ¶ 43. Foreman acknowledges that these suspensions took place but contends that he only signed the waivers to avoid being terminated. *See* Pl.'s Objs. and Resp. to Def.'s Statement of Undisputed Material Facts and Counter-Statement of Facts ("Pl.'s Objs.") ¶¶ 36-37, 40, 43, ECF No. 60.

On May 8, 2014, an incident took place while Foreman was working at Soo Line's Bensenville location. The details of what transpired that day are hotly contested between the parties. A trainmaster, Carlos Feliciano, observed Foreman riding a tank car, and decided to

speak to Foreman about the way in which he had been riding the car. According to Feliciano, he first observed Foreman on the south side of the tank car. He then lost sight of him, and next observed him on the north side of the train. Rule T-8 of the company's Safety Rule Book for Field Operations provides that crossing over between coupled, moving cars is a safety violation. Feliciano later recalled that after he first saw Foreman, the cars were in motion and did not stop moving before he again saw Foreman on the north side of the tracks, *see* DSOF ¶ 50, meaning that Foreman had crossed between the cars while they were moving. The two men then engaged in a conversation. According to Feliciano, during that conversation Foreman admitted that he had crossed between moving equipment. *Id.* ¶ 52. Foreman contests two main details of Feliciano's version of events. First, he denies having crossed through moving equipment; he asserts that he stopped the train when he crossed over. Pl.'s Objs. ¶ 50. Second, he denies having told Feliciano that he had crossed through moving equipment and states that he was confused about the substance of Feliciano's inquiry. *Id.* ¶ 52; PSOF ¶ 20.

Following this incident, a hearing was conducted on May 21, 2014, pursuant to the collective bargaining agreement ("CBA") that governed Foreman's employment with Soo Line. The hearing officer, John Granfeldt, concluded that Foreman had violated Rule T-8 and recommended that he be terminated after that hearing. Upon reviewing the hearing record, Superintendent Brandon Smith likewise recommended that Foreman be discharged. Mark Redd, Soo Line's General Manager Operations for the U.S. West Region, made the final decision to approve Foreman's termination, and Foreman was notified of his dismissal in a letter on May 30, 2014.

In August 2014, Foreman appealed his dismissal under the CBA. Soo Line denied the appeal in a letter dated November 21, 2014. Foreman's appeal was subsequently heard before a

3

three-member Public Law Board (PLB).[1] In September 2016, the PLB denied Foreman's claim and upheld his dismissal.

In January 2015, Foreman filed a charge with the EEOC, challenging his firing on the basis that it was in retaliation for having filed both the previous charge of discrimination and the federal lawsuit against Soo Line, in violation of Title VII. (He does not allege that the termination itself was discriminatory.) After investigation, the EEOC closed its file on that charge, saying that it was unable to conclude that Soo Line had violated the statute. The EEOC issued Foreman a right-to-sue notice in January 2016, and Foreman filed the complaint in this case on April 1, 2016.

## DISCUSSION

A court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In reviewing a motion for summary judgment, the Court "construe[s] all facts and inferences in favor of the nonmoving party." *Love v. JP Cullen & Sons, Inc.*, 779 F.3d 697, 701 (7th Cir. 2015).

Title VII prohibits an employer from retaliating against an employee because the employee has "opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). In the past,

---

[1] A Public Law Board is an arbitration panel that is authorized to resolve certain disputes under the Railway Labor Act. The CBA that governed Foreman's employment with Soo Line provided covered employees with the right to notice and a hearing before formal discipline could be imposed, as well as the right to appeal an adverse decision resulting from the formal hearing to the highest designated officer on the property. If the employee was not satisfied with the outcome of that appeal, he was permitted to appeal that decision to a Public Law Board. *See* DSOF ¶¶ 9, 11.

4

in this Circuit, courts frequently distinguished between "direct" and "indirect" methods of proof in evaluating claims under Title VII. Both parties in this case have used the "direct" and "indirect" methods to frame their arguments in their briefing. The Seventh Circuit, however, decisively rejected this approach in *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760 (7th Cir. 2016). In that case, the court held that "district courts must stop separating 'direct' from 'indirect' evidence and proceeding as if they were subject to different legal standards." *Id.* at 765. Instead, *Ortiz* clarified that the operative test "is simply whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action." *Id.*

In the context of Title VII retaliation claims, the Seventh Circuit later clarified, this means that courts must ask whether the record contains "sufficient evidence to permit a reasonable fact finder to conclude that retaliatory motive caused the discharge." *Lord v. High Voltage Software, Inc.*, 839 F.3d 556, 563 (7th Cir. 2016). To survive summary judgment on a Title VII retaliation claim, a plaintiff must produce enough evidence for a reasonable jury to conclude that (1) he engaged in a statutorily protected activity; (2) the defendant took a materially adverse action against him; and (3) there was a but-for causal connection between the protected activity and the adverse action. *Nicholson v. City of Peoria, Ill.*, 860 F.3d 520, 523 (7th Cir. 2017) (citations omitted). To satisfy the "but-for" causation requirement, a plaintiff must prove "that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013).

In the present case, there is no doubt that Foreman engaged in protected activity by filing an EEOC charge, *see Greengrass v. Int'l Monetary Sys. Ltd.*, 776 F.3d 481, 485 (7th Cir. 2015),

and by filing a federal lawsuit against Soo Line. *See O'Neal v. City of Chicago*, 588 F.3d 406, 409 (7th Cir. 2009). Nor is there any question that terminating Foreman's employment was a materially adverse action. *See Castro v. DeVry Univ., Inc.*, 786 F.3d 559, 564 (7th Cir. 2015) ("A termination is of course a materially adverse employment action."). The dispute between the parties, therefore, concerns whether a jury could reasonably conclude that there was a but-for causal relationship between the protected activity and Foreman's termination.

A plaintiff may establish a causal link between protected activity and an adverse employment action through either direct or circumstantial evidence. Direct evidence, such as when an employer expressly admits that the company is acting in a discriminatory manner, is rare. *See O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011). Circumstantial evidence, in contrast, may include "suspicious timing, ambiguous statements, treatment of similarly-situated employees, and any other relevant information that could permit an inference of retaliation." *Burton v. Bd. of Regents of the Univ. of Wis. Sys.*, 851 F.3d 690, 697 (7th Cir. 2017). It may also include "evidence that the employer offered a pretextual reason for an adverse employment action." *Coleman v. Donahoe*, 667 F.3d 835, 860 (7th Cir. 2012) (citations and internal quotation marks omitted).

In the present case, Foreman has offered no direct evidence of retaliation. Moreover, none of the factors listed above as most commonly indicative of retaliation are present. Indeed, in this case, many of those factors point against an inference of causation. For example, consider the issue of timing. In general, the farther in time the adverse action is from the protected activity, the weaker the inference of causation will be. *See Wells v. Unisource Worldwide, Inc.*, 289 F.3d 1001, 1008 (7th Cir. 2002) ("[T]he hint of causation weakens as the time between the protected expression and the adverse action increases."). While there is no bright-line rule that a

lengthy time gap between the protected activity and the adverse action will preclude recovery, a "substantial time lapse" is "counter-evidence of any causal connection." *Filipovic v. K & R Express Sys., Inc.*, 176 F.3d 390, 399 (7th Cir. 1999) (citation and internal quotation marks omitted). The Seventh Circuit has stated that gaps of about nine months to a year "tend to undermine rather than support any inference of causation." *King v. Ford Motor Co.*, 872 F.3d 833, 842 (7th Cir. 2017). Here, Foreman filed the EEOC charge in May 2011 and the lawsuit in July 2012. His firing in May 2014 took place a full three years after he filed the EEOC charge and nearly two years after he filed the federal lawsuit. While this fact does not by itself doom Foreman's chances of prevailing, it does tend to undermine rather than support any inference of causation.[2]

Nor has Foreman demonstrated that any other similarly situated employees were treated better than he was. The Seventh Circuit has stressed that "the similarly-situated inquiry" is a "flexible, common-sense, and factual" one, and that it asks whether there are enough common features between individuals to allow for a meaningful comparison. *Coleman*, 667 F.3d at 841 (citing *Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 405 (7th Cir. 2007)). Among the factors

---

[2] Foreman argues that there was only a gap of six months between the date when his claims against Soo Line were settled with Soo Line's signing of the settlement agreement and his termination. *See* Pl.'s Resp. in Opp. to Def.'s Mot. for Summ. J. 8, ECF No. 58. This argument misunderstands how the proximity inquiry works. In the context of an EEOC charge, the filing of the charge is what constitutes the protected activity. In calculating the time interval between the protected activity and the adverse action, the date of filing is the point of reference. *See Filipovic*, 176 F.3d at 399. The same is true when the protected activity is the filing of a lawsuit. *See Burton*, 851 F.3d at 698 ("The last potential protected activity here was the filing of this lawsuit in April 2014."). Here, the protected activities that Foreman engaged in were the filing of his EEOC charge and the filing of his previous lawsuit. It is the dates of filing that are relevant for the purposes of measuring the temporal proximity between the protected activity and the adverse action, not the date of the signing of the settlement agreement. Moreover, even if Foreman were correct on this point, a gap of six months would not be nearly small enough to raise an inference of causation without additional support. *See Argyropoulos v. City of Alton*, 539 F.3d 724, 734 (7th Cir. 2008) (holding that a seven-week interval was not sufficient, by itself, to infer a causal link).

courts look at as part of this analysis are "whether the employees being compared (1) were supervised by the same person, (2) were subject to the same standards, and (3) 'engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them.'" *Johnson v. Advocate Health & Hosp. Corp.*, 892 F.3d 887, 895 (7th Cir. 2018) (quoting *Coleman*, 667 F.3d at 841). Foreman asserts that "similarly situated Soo Line employees who did not complain of racial discrimination were treated better than him." Pl.'s Resp. in Opp. to Def.'s Mot. for Summ. J. 13, ECF No. 58. This assertion, however, is conclusory and unsubstantiated. Foreman appears to be arguing that, as a group, Soo Line employees outside of his protected class who were situated similarly to him were treated more favorably.[3] But Foreman has failed to name or identify any individual who meets this definition. Put another way, Foreman has not established that any individuals who were similarly situated to him even exist, let alone that they were treated better than he was. This fact, too, points against any inference of causation.

Foreman also asserts that the other plaintiffs in the discrimination lawsuit "were singled out for harsher disciplinary action" for subsequent rule violations than were other employees,

---

[3] Foreman attempts to bolster this contention by noting that the only other individual he had discovered who had been disciplined for a crossover violation (an employee by the name of Lenoir) was also an African American male. That fact does not help his cause, however; his claim is for retaliation, not for discrimination, and in the context of a retaliation claim a "similarly situated" employee is not necessarily someone of the same race but rather someone who also "engaged in protected activity reporting discrimination." (In other words, that the only other person disciplined for a crossover violation—assuming for the sake of argument that is the case—was an African American does not help establish a claim premised on retaliation rather than discrimination.) Moreover, that Soo Line had disciplined for the same infraction an employee who had ***not*** claimed that he had been discriminated against does nothing to advance a claim that Foreman's discipline was retaliatory; to the contrary, as Soo Line notes in its Reply (at 12), it tends to rebut the thesis of retaliation. Foreman might have argued, but did not, that the delta between the discipline imposed on him (termination) and that imposed on Lenoir (a thirty-day suspension) reflects retaliatory animus, but that argument would fall flat because it is uncontroverted that Lenoir did not have the prior disciplinary record that Foreman had amassed.

PSOF ¶¶ 5-6, but Foreman again provides no basis to support such a comparison. There were two other named plaintiffs in the prior suit who were employed when the suit was filed; one remains employed by Soo Line and the other retired with full benefits in 2015, and Foreman identifies no disciplinary action taken against either of them in the wake of their filing of the discrimination lawsuit. Instead, Foreman merely states that "there was a culture amongst upper management where former plaintiffs to the harassment lawsuit were singled out for harsher disciplinary action as opposed to non-plaintiff employees." *Id.* ¶ 5. The source for this assertion, however, is a statement made in a deposition that makes this same allegation, but without any additional details. *See* Dep. of Keith Coleman 24:20-23, ECF No. 59-2. The statement in the deposition, too, is merely a generalization that does not provide any specific examples of former plaintiffs to the lawsuit who were treated more harshly than non-plaintiff employees. This is a conclusory assertion that does not create a genuine issue of material fact.

Foreman's primary argument appears to be that Soo Line's stated reason for firing him—that he violated the safety rule on May 8, 2014—was pretextual. There are effectively two components to this claim. First, Foreman alleges that the prior disciplinary actions taken against him in 2013 and early 2014 were meant to create a record that would support his eventual firing. He alleges that after he filed his EEOC charge, managers followed him around, seeking a reason to terminate him. *See* PSOF ¶ 6. According to Foreman, Soo Line "instigated various false allegations against Foreman that he was required to sign waivers for so that he could keep his job." *Id.* Second, Foreman asserts that the hearing that followed the May 8 incident was a "sham hearing." Pl.'s Resp. in Opp. to Def.'s Mot. for Summ. J. 9. In his telling, the company did not follow many of its own stated procedures in determining whether to impose discipline on him, which supports an inference of pretext. *See id.* at 6-7.

9

In assessing whether Soo Line's explanation was pretextual, the operative test is not whether the company's substantive judgments about Foreman's performance were correct. Instead, the question is "whether the employer honestly believed the reason it has offered to explain the discharge." *O'Leary*, 657 F.3d at 635. In other words, "the only question is whether the employer's proffered reason was pretextual, meaning that it was a lie." *Id.* (quoting *Naik v. Boehringer Ingelheim Pharm., Inc.*, 627 F.3d 596, 601 (7th Cir. 2010)). A plaintiff may point to an employer's "departure from its own policies" as circumstantial evidence of discrimination. *Bagwe v. Sedgwick Claims Mgmt. Servs., Inc.*, 811 F.3d 866, 882 (7th Cir. 2016). For such a departure to serve as evidence, however, "there must be evidence of a specific policy that is regularly enforced and followed in similar situations." *Id.*

Foreman has failed to show that there is a genuine issue of material fact regarding whether Soo Line's explanation was pretextual. With respect to the disciplinary actions before May 2014, Foreman has offered no evidence that they were pretextual. Even if one accepts as true his assertion that he did not believe he had committed any violations on those occasions and that he only signed the waivers to keep his job, none of his supporting citations to the record provide any evidence that the accusations were in fact false. Nor do they show that the company did not honestly believe its reasons for disciplining him. Indeed, the premise of Foreman's argument that his admissions should be discounted as expedient measures he took to preserve his job implicitly acknowledges that termination was alternative discipline the company could have imposed on the basis of those violations. That acknowledgment raises the question: If Soo Line wanted a pretext to terminate Foreman, why didn't it use any of the violations it charged before the crossover incident?

With respect to the May 2014 incident and hearing, it is important to note that Foreman's contention that he did not violate Rule T-8 does not create a material fact dispute; the issue is not whether Foreman actually violated the rule but whether Soo Line's claim that he did was pretextual. In that regard, Foreman contends that Soo Line did not follow its own internal procedures for addressing rule violation accusations by failing to adequately investigate the incident. *See* Pl.'s Resp. in Opp. to Def.'s Mot. for Summ. J. 6-7; PSOF ¶¶ 23-27. He further argues that the hearing officer was hostile to his case and did not give him a "fair opportunity" to present his side of the story. *See* Pl.'s Resp. in Opp. to Def.'s Mot. for Summ. J. 9-10. Nevertheless, Foreman has fallen well short of demonstrating that there was any "specific policy that [was] regularly enforced and followed in similar situations," *Bagwe*, 811 F.3d at 882, that was not followed in his case. Nor has he provided any reason to think that any of the individuals involved in his termination did not honestly believe the reasons they gave for his firing.

Foreman's claim of pretext also falters on the absence of any evidence that the managers who recommended his termination even knew of his participation in the discrimination lawsuit. The evidence is uncontroverted that Mark Redd, who made the final decision to terminate Foreman, was not even aware that Foreman had previously filed an EEOC charge or a federal lawsuit against the company. In response, Foreman invokes the "cat's paw" theory of liability. A "cat's paw" theory seeks to hold an employer liable for the animus of an individual even when that individual was not charged with making the ultimate employment decision. *See Staub v. Proctor Hosp.*, 562 U.S. 411, 415 (2011). It applies when a "biased subordinate" uses the formal decision-maker "as a dupe in a deliberate scheme" to achieve a discriminatory employment action. *Johnson v. Koppers, Inc.*, 726 F.3d 910, 914 (7th Cir. 2013) (citations and internal quotation marks omitted). The theory requires that there be evidence that (1) a "biased

subordinate actually harbored discriminatory animus against the victim," and (2) the "biased subordinate's scheme was the proximate cause of the adverse employment action." *Id.* The implication of Foreman's "cat's paw" argument is that Redd was acting as a dupe for someone else who in fact harbored discriminatory animus toward Foreman. However, Foreman provides no evidence to support this claim. Foreman does not even identify who the "biased subordinate" in this scenario might have been, let alone provide evidence that this person held any discriminatory animus toward him. The "cat's paw" theory, therefore, cannot bolster Foreman's claims.

Foreman's remaining allegations are all conclusory and thus also do not create a genuine issue of material fact. *See Lucas v. Chicago Transit Auth.*, 367 F.3d 714, 726 (7th Cir. 2004) ("We repeatedly have held that conclusory statements, not grounded in specific facts, are not sufficient to avoid summary judgment."). At summary judgment, Foreman's claim depends on evidence that could support a jury verdict in his favor, but he has not put forward any evidence, whether direct or circumstantial, sufficient to support a jury finding that retaliation for his prior protected activity was a but-for cause of his termination.[4] His retaliation claim therefore fails.

---

[4] It is "a well-settled rule that a party opposing a summary judgment motion must inform the trial judge of the reasons, legal or factual, why summary judgment should not be entered." *Liberles v. County of Cook*, 709 F.2d 1122, 1126 (7th Cir. 1983). As the Seventh Circuit has put it, a "lawsuit is not a game of hunt the peanut. Employment discrimination cases are extremely fact-intensive, and neither appellate courts nor district courts are 'obliged in our adversary system to scour the record looking for factual disputes.'" *Greer v. Bd. of Educ. of the City of Chicago, Ill.*, 267 F.3d 723, 727 (7th Cir. 2001) (quoting *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 921-22 (7th Cir. 1993)). In assessing whether there are any genuine issues of material fact in this case, therefore, this Court is "necessarily limited to arguments presented in [Foreman's] opposition brief." *Burton*, 851 F.3d at 695.

\* \* \*

Because Foreman has failed to provide evidence of specific facts creating a genuine, material dispute as to his claim, Soo Line is entitled to judgment as a matter of law. Accordingly, Soo Line's motion for summary judgment is granted and judgment will be entered in its favor.

Dated: October 17, 2018

John J. Tharp, Jr.
United States District Judge